UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

Sheila Lucas,

      Plaintiff,

      v.

Carolyn Colvin,
Acting Commissioner of Social Security
Administration,

      Defendant.

Case No. 3:13-CV-258-JVB

**OPINION AND ORDER**

Plaintiff Sheila Lucas seeks judicial review of the decision of Defendant Carolyn Colvin, the Acting Commissioner of Social Security. The Social Security Administration denied her petitions for both Disability Insurance Benefits and Supplemental Security Income benefits under the Social Security Act. For the reasons stated below, the Court remands this case to the Social Security Administration for further proceedings consistent with this Opinion.

**A. Procedural Background**

Plaintiff applied for Supplemental Security Income disability benefits on May 24, 2010, and Disability Insurance Benefits on June 11, 2010, alleging that she became disabled in January 2008. (R. at 154–162.) Her claims were denied. (R. at 82–95.) Plaintiff requested a hearing in front of an Administrative Law Judge ("ALJ"). (R. at 96–97.) Her hearing was held on October 3, 2011. (R. at 37–66.) On December 16, 2011, the ALJ determined that Plaintiff was not disabled under the Social Security Act. (R. at 18–36.) The Appeals Council denied Plaintiff's request for review, making the ALJ's opinion final. (R. at 1–7.)

**B. Factual Background**

**(1)** *Plaintiff's Background and Testimony*

Plaintiff was born in January 1967. (R. at 154.) Plaintiff graduated high school with a GED, followed by an associate's degree in general studies. (R. at 57.) Before applying for disability in May 2010, she was a certified nursing assistant from 2007 to 2008. (R. at 39, 191.) While caring for her client, Plaintiff occasionally lifted up to eighty pounds and frequently lifted and carried twenty-five pounds. (R. at 191.)

Before that, from 1998 to 2004, Plaintiff was a claims service representative for an insurance company. (R. at 190.) This required her to sit for about seven hours per shift, answering phone calls and typing insurance claims. (R. at 192.) She only stood or walked during breaks. (R. at 192.)

From 2004 to 2006, Plaintiff worked as a library assistant, where she sat for about two hours of her shift and stood/walked for the remaining three hours of her shift. (R. at 193.) Although she only occasionally lifted fifty pounds, she routinely lifted and carried twenty-five pounds, while lifting between five and fifteen pounds daily. (R. at 193.)

From 2006 to 2007, Plaintiff worked as a site coordinator for the Second Harvest Food Bank. (R. at 55, 194.) She walked and stood most of the day, with only brief periods of sitting. (R. at 194.) Plaintiff occasionally lifted up to sixty pounds, but lifted and carried between twenty-five to thirty pounds daily. (R. at 194.)

Plaintiff stopped working in January 2008 when her client passed away. (R. at 39.) Plaintiff testified that even if her client hadn't passed away, she thought that she wouldn't have been able to continue to do the job for much longer. (R. at 40.)

Plaintiff testified at the December 2011, hearing, that she can do housework, but suggested that she is not a dependable employee because "some days it's very hard just to get out of bed and do mundane things around the house." (R. at 45.) Plaintiff also testified that, although she can lift a gallon of milk, she could not sit for more than fifteen to twenty minutes because her legs will go numb. (R. at 45–46.) Plaintiff can push herself to stand and walk for more than fifteen or twenty minutes, but if she does, she's unable to get out of bed for the next two days in order to recover. (R. at 52.) Plaintiff also testified that she is unable to hold on and grasp things, and typically will drop dishes while washing them. (R. at 53.) Plaintiff also testified that she gets migraines usually once or twice a month, and after taking medication is typically bedridden until they are better. (R. at 54.) A trip to the hospital is sometimes necessary if the medication fails to work. (R. at 54.) Plaintiff also has asthma that is triggered by extreme cold or heat, wetness, and humidity. (R. at 57.)

**(2)** *Medical Evidence*

Plaintiff claimed she has diabetes, fibromyalgia, osteo-arthritis, asthma, soregensons disease, high blood pressure, irritable bowel syndrome, depression, migraines, and allergies. (R. at 176.)

On May 4, 2010, Plaintiff had an x-ray that demonstrated degenerative changes in her right knee, indicating arthritis. (R. at 246, 289.) Plaintiff has been seeing Dr. Tran since May 2010, who suggested that she may be suffering from an undifferentiated connective tissue disorder. (R. at 246–47, 514–33.) However, another rheumatologist, Dr. Tahir, questioned Dr. Tran's diagnoses of a connective tissue disorder, mentioning a history of the disease, but concluding that currently Plaintiff "does not have many features to suggest CTD [connective

3

tissue disorder]." (R. at 553–54.) Plaintiff has undergone a few physical and occupational therapy appointments in June 2010 for the osteoarthritis in her knee. (R. at 246, 422–36.) Also in June 2010, Plaintiff underwent a polysomnogram which indicated that she had mild obstructive sleep apnea and signs of sleep deprivation. (R. at 246, 290.)

In July 2010, Plaintiff was also seen by Dr. Krier for a mental examination, which revealed major depressive and anxiety disorders (R. at 246, 442–44.) In August 2010, Plaintiff was seen by Dr. Wa'el Bakdash at the request of the Indiana Disability Determination Bureau. (R. at 246, 445–47.) He diagnosed her with fibromyalgia, type II diabetes, osteoarthritis in the right knee with a slight restriction on movement, asthma, high blood pressure, irritable bowel syndrome, depression, migraines, allergic rhinitis, and obesity. (R. at 246, 445–47.) In June 2011, Dr. Hirisadarahally assessed Plaintiff, noting uncontrolled diabetes mellitus type II, thyroid nodules, and Hashimoto's thyroiditis. (R. at 247, 544.)

On August 24, 2010, Joseph A. Pressner completed a mental residual functional capacity ("RFC") assessment. (R. at 462–65.) He determined Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions. (R. at 462.) She was also moderately limited in her ability to complete a normal workday, interact appropriately with the general public, and travel to unfamiliar places or use public transportation. (R. at 462.)

Medical consultant and state agency reviewing physician, Dr. J. Sands, then completed Plaintiff's physical RFC. (R. at 473–80.) He determined that Plaintiff could occasionally lift or carry up to twenty pounds; frequently lift or carry up to ten pounds; stand or walk, with normal breaks, up to roughly six hours of an eight hour workday; sit for roughly six hours of an eight hour workday; is unlimited in her ability to push or pull; frequently balance, stoop, kneel, crouch, or crawl; occasionally climb ramps and stairs; and never climb ladders, ropes, or

4

scaffolds. (R. at 474–75.) Plaintiff had no manipulative, visual, or communicative limitations but should avoid concentrated exposure to any environmental conditions involving wetness or hazards such as machinery or heights. (R. at 476–77.)

A year later on October 2011, treating physician Dr. Berghofer in his RFC of Plaintiff, stated that she is incapable of low stress jobs; that she can sit or stand for no more than twenty minutes; sit or stand for less than two hours in an eight hour workday; must walk for ten minutes, every ten minutes during an eight hour work day; should never lift more than twenty pounds and rarely lift less than ten pounds; can occasionally look down and turn her head right or left and can hold her head in a static position while rarely looking up; should never stoop, crouch/squat, climb ladders and should rarely twist or climb stairs; has significant limitations with reaching, handling, or fingering; and would likely be absent from work for more than four days per month. (R. at 623–25.)

Plaintiff's medications include Lipitor, Fentanyl, Hydrocodone-Acetaminophen, Tramadol, Cyclobenzaprine, Metformin HCL, Januvia, Lisinopril, Levothyroxine, Celebrex, Sertraline, Estradiol, Singulair, Proair, Hydroxychloroquine, Loratadine, Fluticasone propionate, doxycycline hyclate, and Nitrofur-macr. (R. at 240.)

 (3) *Vocational Expert's Testimony*

Vocational expert Stephanie Archer ("VE") testified at Plaintiff's hearing before the ALJ. (R. at 59–66.) The ALJ provided the VE with a hypothetical, using information from Dr. Sand's physical RFC, as well as Plaintiff's age, education, and work experience. (R. at 59.) However, he failed to incorporate the RFC from Plaintiff's treating physician, Dr. Berghofer. The VE stated that she would not be able to return to her nursing assistance position due to the lifting

requirements. (R. at 60.) The VE also stated that Plaintiff would not be able to return to her work as a claims service representative. (R. at 61.)

The ALJ then provided a second hypothetical introducing the results from Plaintiff's mental examination. (R. at 62.) He also included her ability to "perform simple, unskilled work" that would limit her interactions to routine and superficial, that she should not engage in fast-paced production work, and that she should be given breaks at least every two hours. (R. at 62.) The VE said Plaintiff could not return to previous work due to her mental restrictions. (R. at 62.) The VE suggested that Plaintiff could work as an assembler (2,400 existing jobs in Indiana) and as a packer (1,200 existing jobs in Indiana). (R. at 63.)

**(4)** *ALJ's Decision*

The ALJ found that Plaintiff was not disabled from January 24, 2010, through the date of the decision. (R. at 21.) The ALJ determined Plaintiff has the following severe impairments: fibromyalgia, obesity, osteoarthritis in her right knee, and affective disorder. (R. at 23.) However, Plaintiff does not have an impairment that meets the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. at 24.)

The ALJ further found Plaintiff's impairments are reasonably expected to have caused her symptoms, including stiffness and pain. (R. at 26.) However, her statements were inconsistent with Dr. Sands's RFC. (R. at 26.) The ALJ found that Plaintiff's claim that the severity of her symptoms made her unable to work is unpersuasive. (R. at 28.) Rather, she can perform limited work activities. (R. at 28.) Thus, the ALJ concluded Plaintiff is capable of making an adjustment to other work which exists in the national economy in large numbers. (R. at 30.)

**C. Standard of Review**

Under the Social Security Act, an individual is allowed judicial review of a final decision by the Commissioner of Social Security. 42 U.S.C. § 405(g). When under review, this Court must determine that ALJ's decision was supported substantial evidence and made under the correct legal standard. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is defined as including relevant evidence that a reasonable mind might then accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). It is the duty of the ALJ, and not this Court, to consider facts and the credibility of witnesses, weigh evidence, resolve evidence conflicts, or substitute its own judgment for that of the ALJ. *Perales*, 402 U.S. at 399–400; *Boiles v. Barnhard*, 395 F.3d 421, 425 (7th Cir. 2005); *Cannon v. Apfel*, 213 f.3d 970, 974 (7th Cir. 2000). Judicial review by this Court will ensure that the ALJ has built an accurate and logical bridge between the evidence and his conclusion, as well as make certain that the agency's findings were accurate in order to provide Plaintiff with meaningful judicial review. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

**D. Disability Standard**

To qualify for Disability Insurance Benefits or Supplemental Security Income, an individual claimant must establish that he or she suffers from and meets a disability listed within the Social Security Act. A disability is "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform her past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart,* 357 F.3d 697, 699–700 (7th Cir. 2004). An affirmative answer leads to either the next step, or on steps three and give, to a finding that the claimant is disabled. *Zurawski v. Halter,* 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it then shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

**E. Analysis**

Plaintiff has two primary contentions upon appeal: (1) the ALJ erred in his assessment of Plaintiff's RFC; and (2) the ALJ erred when relying on the testimony of the vocational expert. (Pl. Brief at 15.) For the reasons explained below, this Court remands this case to the SSA for further proceedings consistent with this Opinion.

**(1)** *The ALJ erred in his assessment of Plaintiff's RFC*

Plaintiff claims that the ALJ legally erred when he assessed an RFC that was not supported by substantial evidence because the ALJ (1) improperly dismissed the opinion of Plaintiff's treating physician Dr. Berghofer; (2) failed to incorporate Plaintiff's connective tissue disorder; and (3) improperly dismissed Plaintiff's testimony. (Pl. Brief at 15–24.) The Court

finds that the ALJ properly justified his decision regarding Plaintiff's connective tissue disorder, but contrary to law, did not take Plaintiff's testimony into account nor explained his reasoning behind the dismissal of treating physician Dr. Berghofer's opinion and RFC. Therefore, the ALJ must address on remand why he did not fully consider Plaintiff's testimony or assessed Dr. Berghofer's opinion as inconsistent with the evidence as a whole.

(a) *The ALJ did not base his RFC conclusion on substantial evidence*

Plaintiff's claim that the ALJ improperly dismissed treating physician Dr. Berghofer's opinion requires remand. "A treating physician's opinion is entitled to more weight because of his longitudinal perspective." *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006). The ALJ must consider the length, nature, and extent of the relationship, frequency of examination, and consistency and supportability of the physician's opinion. *Id.* at 377. "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). The ALJ needs to justify his decision with substantial evidence, which is "'more than a scintilla' but less than a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001) (citations omitted). Evidence is "inadequate" if it is ambiguous, outdated, or insufficient in quantity or detail. *Sutton v. Barnhart*, 183 Fed. Appx. 555, 560 (7th Cir. 2006).

Here, this Court cannot determine what evidence the ALJ found to discount the treating physician because he says no more than "Dr. Berghofer's opinion is given little weight as it is not supported by and is not consistent with exam records." (R. at 28.) He then states that the contrasting opinion of Dr. J. Sands was given "significant weight because it is supported with

references to the exam record and is consistent with treatment provided." (R. at 28). The ALJ also placed great weight on the consultative exam of Dr. Wa'el Bakdash and his exam in August 2010. (R. at 26.) However, there is no "accurate and logical bridge" from the evidence of contrasting RFCs to the ALJ's conclusion as to why one deserves and receives more weight than the other. *Cf. Scott*, 297 F.3d at 595 (requiring an ALJ to build this bridge from evidence to conclusion so that the reviewing court "may assess the validity of the agency's ultimate findings").

The RFC assessments by Dr. Berghofer and Dr. Sands are opposite, in that Dr. Berghofer, in his October 2011 RFC, given over a year after Dr. Sands's RFC, indicated that Plaintiff is "incapable of even 'low stress' jobs.'" (R. at 623.) The opinions of Dr. Sands and Dr. Bakdash, received in 2010, stated Plaintiff had no manipulative limitations and no tenderness in her joints. (R. at 26, 28.) Further opinions by Doctors Tran and Tahir, in 2011, indicate that either Plaintiff's disease has progressed since the 2010 examinations or demonstrate a drastic difference in opinion between doctors. (R. at 27.) There is explanation provided for the diagnoses by Doctors Tran and Tahir in the ALJ's decision, but he provides no explanation for his failure to take into account their more recent exams of Plaintiff as compared to the 2010 exam of Dr. Bakdash. (R. at 26–27.) Without a demonstration of evidence otherwise, the ALJ cannot say for certain that the opinion of Dr. Berghofer is inconsistent, and upon remand must explain with sufficient evidence his reasoning.

(b) *The ALJ failed to take into account Plaintiff's testimony*

When assigning an RFC, the ALJ must consider not just the objective medical evidence and opinion from medical sources, but also Plaintiff's testimony. 20 C.F.R. § 404.1545(3).

10

Plaintiff claims that the ALJ erred when he failed to confer what weight he gave to Plaintiff's testimony. (Pl. Brief at 20.)

The Seventh Circuit has criticized Social Security Administration's ALJs for employing language that is filled with "opaque" and "meaningless" boilerplate language that fails to provide the necessary facts to make a proper decision. *Bjornson v. Astrue*, 671 F.3d 640, 644 (7th Cir. 2012). Boilerplate language gives "no clue to what weight the trier of fact gave the testimony." *Bjornson*, 671 F.3d at 645. Although boilerplate language by itself does not make the ALJ's determination invalid, it is the failure by the ALJ to then explain and provide evidence from the record that makes the decision invalid. *Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011).

"Because the ALJ is in the best position to observe witnesses, [the Court] will not disturb [their] credibility determinations as long as they find some support in the record." *Dixon v. Massanari*, 270 F.3d 1171, 1178–79 (7th Cir. 2001). Courts will "reverse an ALJ's credibility determination only if the claimant can show it was 'patently wrong.'" *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (citation omitted). However, "patently wrong" is a high burden, and an ALJ's credibility determination does not have to be flawless. *Turner v. Astrue*, 390 Fed. Appx. 581, 587 (7th Cir. 2010); *Adams v. Astrue*, 880 F. Supp. 2d 895, 905 (N.D. Ill. 2012) (citing *Similia v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2008)). Only when there is a completely failure by the ALJ to provide any explanation for his credibility determination that a court will declare the decision to be patently wrong and worthy of a reversal. *Elder v. Astrue*, 529 F.3d 408, 413–414 (7th Cir. 2008) (citations omitted).

Here, the ALJ determined that Plaintiff had the RFC to perform certain sedentary work with a list of exceptions. (R. at 25.) The ALJ followed this with his credibility findings using the following boilerplate language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment.

(R. at 26.) The ALJ spends most of his decision discussing Plaintiff's medical records, her list of impairments, and what Plaintiff testified she is capable of doing. However, beyond the boilerplate language listed above, he never explains why he discredited her testimony. He instead uses the opinion of Dr. Bakdash as evidence to show Plaintiff is not suffering like she testified. (R. at 26.)

The ALJ does not take into account Plaintiff's testimony that she cannot perform sedentary work because she "would [not] be reliable," "can't [sit for] longer than like 15 or 20 minutes because [her] legs will go numb," but that when she "push[es] herself further . . . [she's] pretty much shot for the next day, sometimes two days." (R. at 45–46, 52.) She also discussed pain in her hands daily and yet the vocational expert and the ALJ determined that she is able to perform the jobs of packer or assemblers, which require nearly constant hand manipulation. (R. at 53, 63.) The ALJ used the exams by Dr. Bakdash and Dr. Sands to discredit Plaintiff because her testimony does not match with the doctors' opinions. (R. at 26.) However, like the inconsistency with the RFCs of Dr. Sands and Dr. Berghofer, the ALJ failed to take into account any exams in 2011. It is in 2011 that Plaintiff received updated results on her aliments, which indicate that her conditions may have worsened over time. (*infra* at 9–10.)

In summary, the ALJ's boilerplate language when determining Plaintiff's credibility was unacceptable as although he makes note of her testimony, he fails to fully address why he discredits it beyond the use of outdated medical exams. Upon remand, the ALJ must fill in the explanatory gaps regarding Plaintiff's testimony, her inability to perform certain tasks, and her

pain level. He must also address his reasoning for using outdated medical exams as explanation and instead provide sufficient, substantial evidence as reasoning for his failure to take Plaintiff's credibility into account.

(c) *The ALJ properly disregarded the connective tissue diagnosis*

The ALJ did not err in not using Plaintiff's diagnosis of a connective tissue disorder in his listing of her impairments. In his opinion, the ALJ mentions that Plaintiff's disorder was diagnosed by Dr. Tran, one of Plaintiff's rheumatologists. (R. at 27.) However, he notes a second opinion by another rheumatologist, Dr. Tahir, who agreed with Dr. Tran's diagnosis of fibromyalgia, but disagreed with the connective tissue disorder diagnosis. (R. at 27, 553–54.) None of the other doctors mentioned in the records suggest this diagnosis, not even her treating physician, Dr. Berghofer. Plaintiff did not list the connective tissue disorder as one of her ailments when she filed for disability. (R. at 23, 176.) Other complaints by Plaintiff are included but the ALJ indicates that "there is no objective medical evidence to show that these impairments are more than transient or that they cause significant vocational limitations." (R. at 23.) There is a logical bridge that if one doctor tentatively diagnoses Plaintiff with a connective tissue disorder and another doctor states she is no longer showing signs of the disease, that the disease is nothing more than a transient impairment.

Because the Court finds that the ALJ finding of the RFC is flawed, the second issue raised by plaintiff in this appeal--- whether the ALJ erred when relying on the testimony of the vocational expert---is moot.

**F. Conclusion**

This Court finds that the ALJ failed to properly build an accurate and logical bridge from the evidence to his conclusions, thereby precluding this Court from meaningfully reviewing the decision. The ALJ is directed to revisit his decision and fill in the missing explanations, as stated above.

The Court remands this case to the Social Security Administration for further proceedings consistent with this Opinion.


SO ORDERED on September 30, 2014.

  S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE